UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE,<br>*ex rel.* JONATHAN SKRMETTI,<br>Attorney General and Reporter,<br><br>    Plaintiff,<br><br>v.<br><br>DR. JAIME M. VASQUEZ, M.D,<br>THE CENTER FOR REPRODUCTIVE<br>HEALTH, P.C., THE CENTER FOR<br>ASSISTED REPRODUCTIVE<br>TECHNOLOGIES, LLC,<br>FERTILITY LABORATORIES OF<br>NASHVILLE, LLC and AMERICAN<br>EMBRYO ADOPTION AGENCY, LLC,<br><br>    Defendants. | JURY TRIAL DEMANDED<br><br>Case No. 3:24-cv-00654 |

## DEFENDANTS/DEBTORS'
## RESPONSE TO STATE'S EMERGENCY MOTION TO REMAND

COME NOW The Center for Reproductive Health, P.C., The Center for Assisted Reproductive Technologies, LLC, Fertility Laboratories of Nashville, LLC and American Embryo Adoption Agency, LLC, Chapter 11 Debtors in the Bankruptcy Court for the Middle District of Tennessee (collectively, the "Debtors"), and provide this brief response to the State's Emergency Motion to Remand.[1]

---

[1] For the reasons stated herein, there is no need for the Court to consider this on an emergency basis. The Debtors suggest that the Court enter a briefing schedule to allow all parties to fully brief this complicated federalism issue. This Response is being provided to the Court to demonstrate that there are legitimate disputed issues, that the status quo is being maintained thus removing any reason for emergency relief, and that there are serious concerns about the viability of human embryos remaining in the control of the receiver.

The State misstates the both the purpose of the Debtor's Chapter 11 filings and the urgency of this matter. The State of Tennessee obtained an *ex parte* temporary restraining order from the Davidson County Chancery Court that gave its nominated receiver, an Arizona resident who has no medical training, complete control over the Debtors' medical practice including, most importantly, approximately 1200 frozen human embryos. The Debtors and their principal, Dr. Jaime Vasquez, have spent the last five weeks cooperating with the receiver and the State by answering questions, responding to dozens of pages of written discovery, providing detailed financial statements (except for the entities over which the receiver had complete control and maintained exclusive control of their records), and providing unfettered access to the Debtors' accountant and business manager.

Despite this cooperation, the State and the receiver have ignored concerns expressed by Dr. Vasquez and by a senior embryologist formerly employed by the Debtors about the conditions under which the embryos have been maintained. Most notably, the receiver ignored serious concerns raised by an embryologist regarding the humidity of the tanks containing the embryos after she received more than six alarms alerting her to the fact that the humidity level had reached unsafe levels. Moreover, despite being in control of the Debtors' operations for more than a month, the report recently filed by the receiver fails to indicate that he has made any progress on a plan to transfer the Debtors' former patients and the embryos to a qualified provider – something Dr. Vasquez was less than a week from accomplishing prior to the State's seizure of the Debtors' businesses. Rather than working with Debtors, Dr. Vasquez and their counsel on providing them comfort that the embryos were safe and that a transition plan was in place, the State insisted on continuing to pursue aggressive litigation tactics and a media blitz against Dr. Vasquez.

The purpose of the Chapter 11 filing was to better ensure the viability of these embryos and the transition of the embryos and the patients to a new provider, and to do so more efficiently (as the receiver's fee application indicates that he had incurred more than *$75,000* in fees and expenses during the first *four days* of the receivership).

Likewise, the urgency of this matter is misstated. Counsel for the Debtors and counsel for the receiver have agreed for the receiver to maintain control of the embryos and to continue working on any transition plan that might be underway, pursuant to the maintenance provisions of 11 U.S.C. § 543, until further order of the Bankruptcy Court. On May 30, 2024, the United States Bankruptcy Trustee filed expedited motions to appoint a Chapter 11 Trustee to manage the estates of all four debtors. That matter is set to be heard on Wednesday, June 5, 2024, in advance of the expiration of the receivership order on June 7, 2024. Far from opposing the relief sought by the United States Trustee, the Debtors support the appointment of an independent, Chapter 11 Trustee; after all, when the Debtors raise serious issues about the receiver's ability to safeguard the embryos at question and the State does not trust Dr. Vasquez's ability to safeguard the embryos, it is only logical that the Court appoint a neutral party to oversee the embryos and their safe transfer to another provider. Thus, the status quo is being maintained (by the receiver's continued possession of the embryos and the imminent appointment of a Chapter 11 Trustee) and there is no reason for the Court to decide this remand motion on an expedited basis, without allowing the Debtors a full opportunity to respond.

While Debtors contend additional briefing would be beneficial here, it is nonetheless immediately evident that the State's action does not qualify for the police and regulatory power exception to the automatic stay. As a threshold matter, it should be noted

that federal courts have applied the police and regulatory power exception narrowly based on the legislative history of Section 362 of the Bankruptcy Code. *E.g.*, *In re Nortel Networks, Inc.*, 669 F.3d 128, 140 n.13 (3d Cir. 2011) (quoting *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 274 n. 6 (3d Cir. 1984)) ("This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in the property of the debtor or property of the estate.") As the Motion accurately notes, courts examining whether an action falls within the exception apply two tests: the pecuniary purpose test and the public policy test. (D.E. 9, at p. 5) (citing *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 385 (6th Cir. 2001)). Here, the application of both tests result in the conclusion that this action is subject to the automatic stay.

First, with respect to the pecuniary purpose test, success of this suit would certainly "result in a pecuniary advantage to the government to the detriment of other creditors." *United States v. Vanguard Healthcare, LLC*, 565 B.R. 627, 633 (M.D. Tenn. 2017) (quoting *Chao*, 270 F.3d at 388 n. 9.) In fact, the State's own Complaint reveals its pecuniary motivation. In addition to injunctive relief and appointment of a receiver, as to both of which the Defendants have been cooperative, the State has requested "that each Defendant separately pay civil penalties of not more than $1,000 per violation to the State for each violation of the TCPA [.]" (D.E. 1-2, at p. 30.) Because the State is seeking a monetary judgment from Defendants, if it proceeds in the state court action, "it will in effect, place its claim in a priority status over other creditors, which is not permitted under the Bankruptcy Code's distribution scheme." *In re Young Oil Corp.*, 419 B.R. 336, 337-38 (Bankr. W.D. Ky. 2009) ("Any decision regarding estate property is the jurisdiction of this

Court.")

Second, with respect to the public policy test, the facts of this case reveal it has been brought to adjudicate the private rights of individuals who sought care from the Defendants. (*See generally*, D.E. 1-2.) The public policy test calls upon courts to analyze whether the lawsuit was filed to effectuate public policy or, instead, to adjudicate private rights. *Chao*, at 389. That distinction is significant because, as the Sixth Circuit put it, "some suits by governmental units, even though they would effectuate certain declared public policies, will nevertheless be regarded as largely in furtherance of private interests." *Id*. Importantly, just because there is an incidental public interest in the litigation does not mean the police power exception applies. *Id*. at 391. Here, even if there may be an incidental public interest, the primary intent of the lawsuit is to adjudicate the rights of Debtors' former patients. (*See generally*, D.E. 1-2.) This is evident by the State's reliance on the individualized injuries allegedly suffered by Jane Does 1, 2, 3, and 4 in the Complaint. (D.E. 1-2, at ¶ 128-131.) Because the State seeks to adjudicate the rights of private individuals, the public policy test weighs in favor of this case falling outside the narrowly applied exception to the automatic stay.

For these reasons, the Debtors respectfully request that this Court (a) deny the State's request for emergency relief on its Motion to Remand; and (b) establish a briefing schedule for all parties in interest to brief the issue of whether the State's cause of action fits within the police powers exception to the automatic stay.

    May 31, 2024                              Respectfully submitted,

                                                     s/ Phillip G. Young, Jr.
                                                     Phillip G. Young, Jr. (21087)

Sarah M. Ingalls (38383)
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, TN 37067
(615) 465-6008
Email: phillip@thompsonburton.com
singalls@thompsonburton.com

Counsel for Debtors/Defendants

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of this pleading has been served on counsel for all parties at interest in this cause by depositing a copy of same in the United States Mail with sufficient postage thereon to carry same to its destination, and e-mail, addressed as follows:

| | |
|---|---|
| David McDowell<br>Matthew D. Janssen<br>Kelley Groover<br>Kristine Knowles<br>Office of the Tennessee Attorney General<br>Public Protection Section<br>Consumer Protection Section<br>UBS Tower, 20th Floor<br>315 Deaderick Street<br>Nashville, TN 37243<br>David.mcdowell@ag.tn.gov<br>Matthew.janssen@ag.tn.gov<br>Kelley.groover@ag.tn.gov<br>Kristine.knowles@ag.tn.gov | Peter Riggs<br>Sarah Kanoy Hobbs<br>Spencer Fane, LLP<br>1000 Walnut Street, Suite 1400<br>Kansas City, MO 64106<br>priggs@spencerfane.com<br>shobbs@spencerfane.com |
| Stephen J. Zralek<br>Spencer Fane, LLP<br>511 Union Street, Suite 1000<br>Nashville, TN 37219<br>szralek@spencerfane.com | Dixie W. Cooper<br>Cumberland Litigation, PLLC<br>5005 Maryland Way. Suite 225<br>Brentwood, TN 37027<br>Dixie@cumberlandlitigation.com |

This 31st day of May, 2024.

/s/ Phillip G. Young, Jr.